May it please the Court, Bert Secuda for the Appellant Estate of Hoohuli. At counsel table is Roy Bell for Tessie Appellant Tessie Coltress. And if at any point Mr. Bell has kindly agreed to allow me to take the lead, if at any point there are questions for Mr. Bell, please feel free to ask him directly. May we reserve three minutes for rebuttal? Yes you may. Watch your time please. Thank you. I'm going to take seriously the admonition not to run through all our arguments. And I'd like to just Not to what? Not to run through all of our arguments again. Everything's in the memos and the briefs. I'd like to address just two points today. First is the definition of owner in the policy itself and the Court's discretion to either address that or not. Second is the breadth of the exception created by HIG case as to when a seller is no longer liable to provide insurance for a car that they own during the sales process. Just how big is that exception created by the HIG case? And does the facts or do the facts of this particular case fall within that exception? First, as to the issue of the definition within the policy, there is no question that this policy does in fact contain a definition of ownership of owner. Is that in every part of the policy? No, it is not. It is only in the PIP. What we call PIP in Hawaii is actually medical payments. In most states it's called MedPay. We call it PIP in Hawaii. MedPay otherwise, right? Correct. It is in the MedPay or PIP section. Under established Hawaii law and actually insurance law generally, definitions in an insurance policy should be consistently applied unless there is a specific reason not to within the policy. So unless stated otherwise, any definition in any part of the policy should be consistently applied. That is to say you shouldn't have one definition for liability, one definition for PIP, one definition for UM unless the policy specifically provides that. That is an issue that was not discussed at the district court level. It is raised for the first time on appeal by us, and it is a matter that is discretionary with the court. This is a purely point. Meaning discretionary whether we even hear the argument? Is that what you're saying? Discretionary whether that argument is considered and addressed on its merits. Right, because you didn't say anything about it to the district court. Why didn't we? I say because you did not. Correct. That is correct. This is purely a question of law. There are no facts that need to be addressed, and therefore it does fall within the exception which gives this court the discretion to exercise that discretion or not. Well, I guess I'm trying to figure out in this particular manner, are you saying that the district court made a legal determination of ownership here? The district court did make a legal determination of ownership. The district court did specifically say that there is no definition of ownership in the policy, and it turns out that that is incorrect. Because there is a specific definition of ownership in the policy, that ownership definition should control. The construction of an insurance policy is to apply the policy provisions strictly and any ambiguities resolved against the insurer and in favor of coverage. But as I understood it, the district court has pretty quickly said that in the plain, ordinary, and accepted sense of common speech in Hawaii, this particular situation based on the two Supreme Court cases would not lead us to the idea that in these particular policies, given that there are three different types and we only have ownership described in one, that it would necessarily in those situations be different than the two Supreme Court cases. I think what the district court said was beginning on page 17 of its decision, it started out the ownership discussion by saying the policy does not define what it means to own an auto, and therefore you find guidance by going to the HIG decision. And if the policy did not contain a definition of ownership, that would be true. Because the policy does contain a definition of ownership, that definition should be applied. Well, and I guess if he had a chance to really focus on this argument, we'd know what he was going to say about that. But my worry is that given the two Hawaii Supreme Court cases and what he has done in those cases, that he would suggest that whatever language there may be in one part of a policy versus another is not supposed to undo Hawaii law. And Hawaii law would suggest that there was a contract here, there was an ownership, there was only one way to South Bay to get out of it, and that was if the financing was not approved, and the bank had already approved it, they were only yelping about fees. We submit that the district court was incorrect, was in error on that point. The district court said that this contract was binding until and unless South Bay Auto disapproved credit. Correct. That's what they said. The terms of the contract don't say that. The terms of the contract say this contract is not binding until and unless South Bay approved. Actually, it says it's not binding on South Bay. Correct. It's not binding on South Bay. It doesn't speak to whether it's binding on those who purchased, on the buyers. Correct. So if you look at the intent and reasonable expectation of South Bay, South Bay is unequivocal. South Bay's 30B6 representative said numerous times, this is our car, it's going to remain our car until we get paid. South Bay's representative even went further and said, and, in fact, that's what the documents say. And the documents do say that. The documents do say that title is not going to change, not going to transfer up until the point that they are paid. Well, but title, the district court, in fact, suggested as to title, that's just a perfunctory thing that happens. It has nothing to do with the actual ownership. The title goes after ownership. What the district court said, if you look at the facts in this situation, South Bay had never wanted that auto back. South Bay worked every bit, every time, to make sure that that person kept the auto. Yeah, they sent something out and said, you ought to pay for what you haven't paid. But then they went right to work to make a new loan agreement. And South Bay also knew that the financier had approved the loan. They were only talking about whether there was going to be some fees if somebody didn't pay on time or something like that. And so the district court said, given what the Supreme Court has said, we think those cases are pretty controlling. I think a fair reading of the question is this. Just how broad is that exception in HIG? Well, can I just, I want to ask, focus on the narrow question. How does the definition of owned by in PIP help you? The definition of owned by in PIP helps us because it says that the seller is the owner and remains the owner up until the time the title is transferred. It doesn't really say that, does it? I think it does say that. Let's look at it. You're referring to the PIP, E, additional definitions, and then number 7, owned by, is that what you're referring to? Correct. Okay. So it says owned by means that a person, A, holds the legal title, all right, that would be Fairmont specialty, they had the legal title, or is a debtor who has legal possession while buying a vehicle on installments. And that kind of sounds like Ms. Petras because she had legal possession. I don't know what the case law is on this because obviously the district court didn't address it, and no one really has fleshed all this out. But B is a debtor who has legal possession while buying a vehicle on installments. I assume she wasn't going to pay that whole loan back at one point. I'm sure it's going to be on installments. C has legal possession and has an agreement or lease of one year or more. Well, she had legal possession and had an agreement. Or is the owner of an auto until on selling the auto, title is delivered to the buyer. So it seems to me that that definition is at least ambiguous. I mean, I want you to explain why it points to only how you read it. For two reasons. First, because if it is ambiguous, all ambiguities are resolved against the insurer. And second, because it is in the disjunctive, an owner is an owner or owned by if it meets any one of these requirements. What I'm saying is it could fit both the parties in this case. And in this case, I think both parties could be construed to have some ownership interest in the sense that. She had legal possession and control, and Fairmont Specialty had the title. She had legal possession. However, she didn't have in the sense of control, having exclusive control over the vehicle because Fairmont, sorry, because South Bay Auto did continue to own the car. South Bay's representative continued to refer to the car as my car, our car. It's clear that in this case, as far as South Bay was concerned, they owned the car up until the point that they were paid. So is it possible that there are multiple ownerships, that Coltriss has an equitable ownership interest? That's possible. Well, let me ask you this. Suppose that instead of buying the car, she had leased the car. Would the garage policy be on the hook for damages arising from an accident of a leased car? If she had leased the car for? Because when you lease a car, the dealer retains the legal title. Right. But if you lease the car for one year or more, and there's a specific provision in the Hawaii Insurance Code that says if you lease the car for one year or more, you are considered the owner. Right. But this one says, okay, it's an agreement or lease, one year or more. Correct. But this was not an agreement for a year. This was contemplated to be a sale upon the happening of an event, and that event is if finance could be placed and the dealer paid. That was never done. Is there any indication in this record that the fees, which is all we were talking about here, would have caused South Bay Auto to disapprove Cotroi's funding? There is nothing in the record that indicates whether the amount of fees was such that South Bay would eventually approve or disapprove. Isn't it instead the record that Mr. Nostufi, and I don't know how you say his name, but that's my best, indicated that even if the funding with SFC would have fallen through, South Bay would have worked something out. Isn't that there at the record at pages 23 and 24? Yes. Mr. Nostufi has said actually contradictory things. At one point he said if the funding fell. Oh, no. Just answer my question. Didn't he say, I mean, I read through the record. I didn't see anywhere where he said South Bay is going to take this car back. In fact, it seemed to me he said we'd have worked it out to find new financing. He said at one point that if the financing didn't go through, she had to bring the car because we are done chasing financing. And then at another point he did say that they would keep trying to finance the car because nobody wants to. Once they sell the car, they don't want it back. It's on page 87 of the record, page 66 of his deposition. And they would have then worked with Tessie Colters to find some other financier. Am I right? His answer was she had a choice to go get another financier or bring my car right now to our dealership because we are done with chasing the bank. So he has said conflicting things about that. But in any event, it is undisputed that financing had not been obtained at that point and that the dealership had not been paid and that, therefore, it remained the dealership's car. Let me just ask you something. I saw something in the record that said that even once the financing was obtained, that until South Bay was paid in full, it would still hold legal title and she could only be the registered owner. No, she was not even the registered owner. That no title documents of any kind were going to be processed until South Bay was paid. She was not even the registered owner at this period of time. No title documents were even processing had not even begun. That is clear. All right. Do you want to save two minutes? Thank you, Your Honor. You haven't really saved it, but I'll give you a little bit after. Thank you, Your Honor. May it please the Court. My name is Patrick Gallagher, and I represent Fairmont Specialty. I think I should perhaps start by addressing the previously unargued issue about the definition of owned by as found in the PIP portion of the statute. And of the statute or of the policy. Thank you for the correction. This is, of course, only the PIP portion of the policy. And if we turn to, this is found at page 134 of all these excerpts from the record. I would like to talk about how it clearly is not applicable here. The definition section, as seen as page 134 for the PIP portion of the statute, begins with the words, as used in this endorsement. Clearly on its page. Right. But the first page, the very first page of this endorsement says, this endorsement changes the policy. Please read it carefully. So the entire endorsement, I thought you might be arguing that. Then I thought that the entire endorsement can be read as changing the garage policy. So even if it's defined for purposes of the endorsement, the thing in its entirety changes. It changes the policy in the sense that it provides for PIP coverage on what is otherwise a garage keeper's policy, a garage coverage policy. Not always a found endorsement in the policies, Your Honor. Let me point out one other thing. One of the other definitions in the PIP section is the definition of insured. An insured means, and there are two categories, one of the things that an insured means in PIP, but not in liability, not in UM or UIM, but particularly not in liability, is a pedestrian. So what we are looking at is additional definitions found in the PIP section that have actually even a different definition of insured than what is found in liability. Because certainly a pedestrian does not have liability coverage as an insured. Which portion of this policy is the estate claiming under? Is it claiming under the PIP, the personal injury damages, or is it claiming as against the garage keeper? The garage keeper's liability section, Your Honor, and the UM and UIM. So they're not claiming under the PIP. My understanding is Ms. Coltree, who's represented by Mr. Bell, is claiming under the PIP. Okay, so she has a separate claim from the estate. One's under the PIP, one's not. So is there a distinction in how this would apply to each of the claims? The PIP section also has the same definitions for covered auto and an insured auto. So the ownership still controls with respect to PIP as well. Let me point out one other thing that happens because of the late argument of this, the presentation of this argument, is that, and this was presented before the district court, all state insurance, the policy that Ms. Coltree secured in order to get the vehicle off the lot, paid Ms. Coltree's PIP. Hawaii law provides that the maximum limit that is compensable for PIP is one vehicle, one policy, regardless of the numbers of policies. So the Coltree's claim for PIP against Fairmont does not exist. It was paid by Allstate already. That's not part of this record, I don't believe. There was, however, Exhibit N to our motion for summary judgment presented at the district court, which did provide a letter from Allstate noting that they had exhausted and paid the full PIP. It was not made part of the supplements for this court, in large measure, because I wasn't aware of the argument coming. But let me point out again, these definitions are exclusive to PIP, necessarily so, in that they define insured differently than it's defined in other places. So we have the anomaly of that, you know, if PIP has an entirely different definition of an insured, which it does, because it includes pedestrians, how can the definition of owned by in PIP become instructive to determine the owner for purposes of determining, again, who is an insured? Can I ask you another question? Yes, Your Honor. Just stepping back, what is the purpose of a garage keeper's policy? And I know that insurance laws, different kinds of policies, were designed to cover certain kinds of liability. So what is the purpose of this kind of policy? It has different, and again, it's Fairmont's specialty. My client sells these kind of policies. They have different and additional sections in places. For example, there is the garage coverage form, which is the liability form, which is what these claimants are proceeding under, contending that Cotrice should be covered for Cotrice's liability. It also has a garage keeper's section, which provides insurance coverage largely from a bailment-type concept, is the way to perhaps think of it, Your Honor, because a garage will often end up getting vehicles from customers to repair, in which case there is sort of a flip-flop of the coverage, if you will, where the garage keeper's policy will apply while they have possession of that customer's vehicle. I don't know if I've answered Your Honor's question, but this particular policy, for example, has a liability section. It has uninsured and underinsured motorist coverage. It does have PIP coverage. If one looks at page... Maybe this would help. Why would an auto dealer want to secure garage coverage, a liability policy? To insure the vehicles it's got while it's sitting on their lot. Does it cover people who are doing test drives, you know, when you go to see whether you want to buy the car or not? I think we're leaping ahead, if you will, to the customer's exclusion, which is also a part of this case in the sense that even if one were to say that Kotri somehow becomes insured under this policy, she remains a customer. And the customers do not have coverage so long as they've got their own coverage. So if, in fact, they're just people who are there taking the car out for a drive and they don't necessarily have coverage under their own auto insurance for such a drive, this would step up? Yes, Your Honor. Absolutely. Absolutely. Let me ask you a little bit different. The court applied Pacific and HIG to this particular case. When I looked at Pacific, it seemed to me in Pacific that the seller had endorsed a certificate of ownership in favor of the buyer and had submitted it to the treasurer for registration. And based on those particular circumstances, the Supreme Court came down and said, I think ownership is passed. That didn't happen here, did it? No, it did not, Your Honor. So why is it we should leap to the same conclusion? Because HIG versus FSIC and the Hawaii Supreme Court did. Well, in HIG, at the time of that contract, the vehicle's certificate of title identified the dealer as the owner, correct? Yes, Your Honor. And first Hawaiian Bank as the legal holder or legal owner. Right. Now, that's not what we have here. Well, the record doesn't have a situation where we have a separate bank holder of the vehicle previously. But we do have a situation. We don't have a bank who's a holder of the vehicle here, do we? No, we don't. In fact, if we're to go right to the particulars of this case, in this particular case, if there is an owner, it has to be either South Auto or it has to be her. And so we're trying to determine that. And so I'm trying to, if you will, look at the facts situations in both HIG and the facts situation in Pacific and say, does this really apply here? We're in a different situation here. Not quite as clear an ownership, if you will. Different than Pacific. But really on all fours with the HIG versus FSIC case, Your Honor. Why? Because in that particular situation, the title was the registered owner, but the bank was the legal lien holder or owner. I think the issue that the Court is focusing on, and it was common to both of those Hawaii cases, is are we tied to, that is, one looks at coverage for insurance purposes, is one tied to this statutory definition of ownership in the registration of the vehicles? I agree. And both cases made it very clear that we are not, that that ends up with an absurd result. And so the distinction that- Well, I guess that where I'm pushing you just a little bit is that in these particular circumstances, I'm not quite sure it's absurd. Because in this particular instance, we have the auto dealer still has the title, the auto dealer still has the right to say this is over, and have even said it's over one time prior. The auto dealer has all of the incidents that they can get back this auto. And so that's a little bit different. Because even in HIG, it was just a matter that the buyer was one day late in paying, if you will, what they owed under a note. That isn't this case. Well, but there is the commonality that in both cases, the dealership had the right to go repossess the vehicle, if you will. That there was still that right to regain possession. Well, my worry is we're really talking about a failure to pay their repossess. That's a little bit different than we've never put the contract together yet, and we're letting you use this vehicle until it's put together. Well, certainly this is not a rental agreement to let you use the vehicle. The contract provided that, if you will, a condition subsequent that if you, the dealership, don't approve my credit, I agree to return the vehicle after you notify me that my credit has not been approved. Are we all on whether this is a condition subsequent or whether it's a matter of the contract? Is that where you're hanging your hat? Well, where I'm hanging my hat, Your Honor, is that that particular condition, if you will, never occurred that the credit never was disapproved. And in fact, Mr. Mustafi testified that he expected it would be approved. So any right that the dealership had to take possession away from his co-trees did not exist. Did not exist at the time of this accident. The credit had not been disapproved. And even if it did exist, the dealership never exercised it by way of a condition subsequent and say, return the vehicle, please. So neither of those two things had occurred. So we had a valid sales contract, which is the magic words, if you will, from Pacific and from HIG versus FSIC. We had Ms. Co-Trees taking possession. In fact, Mr. Mustafi testified that he would not give her possession until she provided a certificate of insurance from her insurer, Allstate. So we are meeting all the statutory requirements for mandatory insurance to have a smooth transfer of insurance coverage on that vehicle with the new owner. So under the HIG case and the Pacific case, we've got a valid sales agreement that had not been ended either by way of condition subsequent or anything to that effect. Co-Trees in possession of the vehicle.  It would be an absurd result to say that she would get insurance under the South Bay policy under those circumstances. She didn't pay any premium for that policy. She didn't make any decision on whether UM or UIM for that policy. Well, to be fair, you can get quite a few of those kind of results in accidents when you are a passenger in somebody's vehicle and you then have an accident and you can claim under your own policy, you can claim under their policy. You don't have anything to do with putting their policy together, but if you don't get enough to do what you've got to do with your injury, you can claim nonetheless. Certainly, Your Honor. It's all a matter of how we interpret that ownership. It is, Your Honor. And the Hawaii Supreme Court has done so in a fashion that makes good sense, in a fashion that was being honored by this business with making sure that there was insurance on the vehicle before possession change. As the district court said, it's to provide for coverage to be supplanted as the ownership transfers, not supplemented. It would be an absurd result to have every vehicle on the roadway with dual insurance for the first 30 days while registration is completed. It would be an absurd result for... If you're in an automobile accident and you have dual insurance as a passenger, it doesn't matter where you come. Fairmont Specialty sells its policy of insurance to South Bay. We can measure that risk. Once the risk becomes policies continue to be covered by unknown customers, unknown credit, unknown jobs, unknown driving records, now that risk is far greater. That's an absurd result, Your Honor. That's what I was trying to get at with asking you questions about the purposes of this kind of policy, because, of course, you would underwrite to the extent of the risk that you see when you issue one of these. Your time's up, and I just wanted, since this argument wasn't fleshed out, I'm just going to tell me if I'm right on this. Your argument is if she wasn't an owner, then she was a customer, and customers fall within the exception to the definition of insured in the policy. Is that right? No, Your Honor. It's not your argument? No, Your Honor, it's not. Our argument is she is not an owner. Excuse me, she is the owner of the vehicle. No, but if she's not the owner, if we were to decide she was not the owner, then would you argue that she fell within the? Yes. Okay. All right, thank you. I'll give you about a minute more. Thank you, Your Honor. First, as to the question of why the PIP definition of owner should apply to the liability section, that is exactly the situation that the Hawaii Supreme Court addressed in the Kerang decision, C-A-R-A-A-N-G. In that case, the issue was what is using the car as defined in the liability section, as used in the liability section. And they took the definition from the PIP section of use and said that it applied to using in the liability section because you apply definitions throughout the policy consistently. Would you respond to that last argument that if we do not define her as the owner, then she is a customer and customers are excluded from the definition of insured? Yes. That issue was addressed by the Hawaii Supreme Court in the Bowers decision. What's the response to the argument? The response was that the Hawaii Supreme Court said, no, if you are the owner, you cannot contractually contract away your obligation to provide that insurance to your customer, and therefore the customer exclusion was struck down. So you're saying this customer exclusion is not a valid exclusion? Correct. And the case is Bower? Bower. Okay. Thank you. Thank you, Your Honor. Anyone else? Okay. Vermont Specialty v. Estate of Whoville is submitted.
judges: Alarcon, Wardlaw, Smith N. R.